UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION



QBE INSURANCE CORPORATION                                    PLAINTIFF

v.                                    CIVIL ACTION NO. *4:11CV9 HTW-LRA*

MARCUS RUTLEDGE
and JONATHAN JONES                                          DEFENDANTS

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, QBE Insurance Corporation, files this Complaint for Declaratory Judgment against Defendants, Marcus Rutledge and Jonathan Jones, and in support thereof would show unto the Court the following:

### PARTIES

1.      QBE Insurance Corporation ("QBE") is an insurance corporation with it principal place of business at 88 Pine Street, New York, New York, 10005.

2.      Marcus Rutledge ("Rutledge") is an adult resident citizen of Mississippi who may be found at 2604 Westheimer, Denton, Texas 76210, in Denton County, Texas.

3.      Jonathan Jones ("Jones") is an adult resident citizen of Mississippi, residing at 2166 CR 23, Bay Springs, Mississippi 39422, in Jasper County, Mississippi.

### JURISDICTION AND VENUE

4.      QBE incorporates Paragraphs 1 through 3 as if fully set forth herein.

5.      This Court has jurisdiction over the parties and subject matter jurisdiction pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy is in excess of $75,000.00.  Further, the Court has jurisdiction under 28 U.S.C.

§1331 to the extent federal law provides the rule of decision in this matter.  Finally, this court is authorized to hear this matter under 28 U.S.C. §2201.

6.      Venue is proper in the Southern District of Mississippi, Eastern Division, because the acts and events at issue occurred in Jasper County, Mississippi.

## FACTS

7.      QBE incorporates Paragraphs 1 through 6 as if fully set forth herein.

8.      QBE issued Policy No. ASA30866 (the "Policy") to H&H Welding, LLC ("H&H Welding") for the period of March 13, 2009 through February 26, 2010. *See Exhibit A,* Policy No. ASA30866.

9.      H&H Welding formerly employed Rutledge and provided Rutledge with a company vehicle to drive to and from work only.

10.     Jones filed a Complaint in the Circuit Court of Jones County on or about October 9, 2009, regarding an accident that occurred on September 18, 2009, involving Jones and Rutledge. *See Exhibit B*, Complaint, *Jones v. Rutledge*, Civil Action No. 19-0083.

11.     Jones alleged that on September 18, 2009, at around 1:30 in the afternoon, he was sitting at a stop sign at the intersection of Jasper County Road LE 1638 and County Road 16 when his car was "suddenly and violently rear-ended" by a truck driven by Rutledge. Jones contends that he "was operating his vehicle in a safe, prudent, careful and cautious manner, keeping proper observation for other traffic…and obeying all laws and traffic regulations." Jones alleges that Rutledge was negligent in that he "was driving at a dangerous and excessive rate of speed," was not keeping a proper lookout, did not slow down as he approached the intersection, and "did not take proper action to avoid the collision." Jones contends that the alleged negligence of Rutledge "was the sole proximate cause of the collision and the resulting injuries" to Jones.

Jones claims to have suffered personal injuries and property damages and seeks compensation for same. *Exhibit B*, Complaint, *Jones v. Rutledge*, Civil Action No. 19-0083.

12.     The police report indicates that the accident occurred on September 18, 2009 as well. *Exhibit C*, State of Mississippi Uniform Crash Report.

13.     At the time of the accident, Rutledge was driving a Ford F350 welding truck that was owned by H&H Welding. Rutledge did not report the accident to H&H Welding and he was not on duty on the date of the accident. Had the accident been reported Rutledge knew or should have known he would be required to take a drug test. Rutledge avoided the drug test by failing to report the accident. Rutledge did not have permission to use the truck on the day of the accident.

14.     On the day of the accident, Rutledge was not on a call nor was in the course or scope of any work for H&H Welding thus he was in direct violation of H&H Welding's policy concerning the use of the vehicle.

15.     Rutledge is not a named insured under the QBE Policy appended as Exhibit A.

16.     Rutledge has sought coverage under the QBE Policy for Jones's claims against Rutledge. Rutledge is presently being defended under a reservation of rights.

### COUNT I – Declaratory Judgment

17.     QBE incorporates paragraphs 1 through 16 as if fully set forth herein.

18.     QBE contends that there is no coverage available under the QBE Policy of insurance, including all endorsements appended thereto. However, to clarify the rights and obligations of the parties, QBE requests a declaration regarding the parties' respective rights and obligations, if any, under the Policy in connection with the indemnification requested by Rutledge.

19.     The Policy, attached hereto as Exhibit A, provides the following as to liability

coverage:

> We will pay those sums that an "insured" legally must pay as damages because of
> "bodily injury" or "property damage" to which this insurance applies, caused by
> an "accident" and resulting from the ownership, maintenance or use of a covered
> "auto".
> …
> We have the right and duty to defend any "insured" against a "suit" asking for
> such damages… However, we have no duty to defend any "insured" against a
> "suit" seeking damages for "bodily injury" or "property damage"… to which this
> insurance does not apply. We may investigate and settle any claim or "suit" as we
> consider appropriate. Our duty to defend or settle ends when the Liability
> Coverage Limit of Insurance has been exhausted by payment of judgments or
> settlements.

*Exhibit A,* Policy No. ASA30866, Business Auto Coverage Form at 2.

20.     According to the Liability Coverage section of the Business Auto Coverage Form,

an "insured" includes, in addition to H&H Welding, anyone else while using with permission

from H&H Welding a covered auto that H&H Welding owns, hires, or borrows. *Exhibit A,*

Policy No. ASA30866, Business Auto Coverage Form at 2. Thus, while using the vehicle with

permission from H&H Welding, Rutledge would be considered a "permissive user" and he

would be an "insured" under the Policy. However, Rutledge only had permission to use the

vehicle for business purposes. At the time of the accident, he was using the vehicle for personal

use, and was outside the scope of permission granted by H&H Welding, the insured.  Further, he

was outside the course and scope of his employment as well.

21.     Jones alleges injury in the accident and would be expected to seek payment under

the H&H Welding Policy if a judgment is entered against Rutledge. Therefore, Jones also has an

interest in the Policy at issue.

22.     QBE requests a declaration from this Court that Rutledge was not an "insured"

under the Policy at the time of the incident because he was not a permissive user at the time of

4

the accident. The H&H Welding truck was for business use only and Rutledge was not supposed to use the truck for personal use. Rutledge was using the vehicle for personal use at the time of the accident. He was not working the day of the accident nor was he responding to a call at the time of the accident.  Further, he failed to follow the procedures of H&H Welding in that he did not report the accident or report for a drug test following the accident.

23.    QBE contends that the loss at issue is excluded from coverage because Rutledge was using H&H Welding's vehicle for personal use, which was outside the scope of permission granted by H&H Welding.

24.    QBE further contends that the MCS-90 would not apply to this accident, but if applicable, under the MCS-90 Endorsement Rutledge is not a named insured.  Therefore, no indemnity would be due for any judgment obtained against Rutledge.

25.    Alternatively, if the Court concludes that Rutledge was an insured under the Policy at the time of the incident, then Rutledge violated a condition precedent to coverage.

26.    The Policy provides that in the event of an accident, the insured must notify the insurer and provide details about the accident. *Exhibit A,* Policy No. ASA30866, Business Auto Coverage Form at 7. If the insured fails to notify the insurer, the insurer has no duty to provide coverage. *Id.* Following the accident, Rutledge did not even notify his employer, H&H Welding, of the accident, much less notify the insurer. *Exhibit D*, Deposition of Rutledge at 50. H&H Welding could not have notified the insurer because H&H Welding had no knowledge of the accident. The duty to notify the insurer of the accident would have been on Rutledge.

27.    The Policy provides that the insurer has "no duty to provide coverage" unless the insured has complied with this duty of notification. *Exhibit A,* Policy No. ASA30866, Business Auto Coverage Form at 7. This is known as a "forfeiture" provision, or one that is a condition

precedent to coverage. Because the insured's giving notice of the accident to the insurer is a condition precedent to coverage under this Policy, if Rutledge is determined to be an "insured," coverage should be denied based on his failure to notify the insurer of the accident.

28.     Another condition of the Policy provides that in the event of an accident, the insured must "[a]ssume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost." *Exhibit A,* Policy No. ASA30866, Business Auto Coverage Form at 7. Rutledge claims that he paid Jones $300 in cash for the damage following the accident. *Exhibit D*, Deposition of Rutledge at 47. This payment was clearly made without consent from the insurer. As such, if it is determined that Rutledge was an insured, even though he deviated from the permission granted by H&H Welding, coverage should still not be available because Rutledge made a voluntary payment without consent from the insurer or otherwise made an admission of liability in whole or in part.

29.     Finally, the Policy provides that the Coverage Form is void if, at any time, any "insured" intentionally conceals or misrepresents a material fact concerning the Coverage Form, the covered auto, the insured's interest in the covered auto, or a claim under the Coverage Form. *Exhibit A,* Policy No. ASA30866, Business Auto Coverage Form at 8. If Rutledge is found to be an "insured" under the Policy, then he violated a condition of the Policy, rendering it void, because he concealed a material fact about the covered auto being involved in an accident as well as the fact that a claim could have resulted from the accident. This prejudiced the insurer as it was unable to investigate the accident and secure relevant evidence.

30.     Based on the foregoing, QBE requests a declaration that Rutledge was not an "insured" under the Policy at the time of the incident, or, in the alternative, if this Court determines that Rutledge was an "insured," QBE requests a declaration that indemnification is

6

not available since Rutledge failed to notify QBE of the accident as specifically required by the Policy, concealed the accident and possible claim from QBE, and made a voluntary payment for the damage without consent from QBE as specifically prohibited by the Policy.

### Count II
### Declaration of No Duty to Defend

31.     QBE incorporates paragraphs 1 through 30 as if fully set forth herein.

32.     Because there is no duty to indemnify in this matter, QBE request a declaration by this Court that it has no duty under its Policy to defend and a declaration that Rutledge will not be prejudiced by a withdrawal of the defense by QBE.

### Count III
### Declaration of No Indemnity Due to Jonathan Jones

33.     QBE incorporates paragraphs 1 through 32 as if fully set forth herein.

34.     QBE requests that for the reasons set forth herein that this Court find Jones is not entitled to any payment under the QBE Policy or any of its endorsements, including the MCS-90, for any judgment he might obtain against Rutledge.

### CONCLUSION

35.     QBE incorporates Paragraphs 1 through 34 as if fully set forth herein.

36.     QBE requests that this Court declare that Rutledge was not an "insured" under the Policy at the time of the incident and, therefore, that QBE does not owe Rutledge any further duties or obligations for the subject accident under Policy No. ASA30866 and specifically that Rutledge is not entitled to indemnity for the loss.

37.     Alternatively, if this Court determines that Rutledge was an "insured," QBE requests that the Court declare that indemnification is not available since Rutledge failed to notify QBE of the accident as specifically required by the Policy, concealed the accident and

7

possible claim from QBE, and made a voluntary payment for the damage without consent from QBE as specifically prohibited by the Policy.

38.     QBE further requests a declaration that Rutledge and H&H Welding will not be prejudiced if the defense in this matter is withdrawn.

39.     Finally, as to Jones, QBE requests the Court find that he is not entitled to any indemnity from QBE for any judgment that he may obtain against Rutledge under the QBE Policy or any of its endorsements.

WHEREFORE, PREMISES CONSIDERED, QBE Insurance Corporation prays that the Court declare that no coverage is available to Marcus Rutledge under QBE Insurance Corporation Policy No. ASA30866 for the subject damage and that QBE Insurance Corporation owes no further duty or obligation to Marcus Rutledge or Jonathan Jones in this matter. QBE Insurance Corporation further requests such other relief, special and general, at law or in equity, to which it may be justly entitled.

This the ___19th___ day of January, 2010.

Respectfully submitted,

**QBE INSURANCE CORPORATION**

By Its Attorneys
*Dunbar Monroe, P.A.*

_____
Clark Monroe

8

**OF COUNSEL:**
G. Clark Monroe II (MSB # 9810)
Lindsey T. Simmons (MSB #103305)
*DunbarMonroe, P.A.*
270 Trace Colony Park, Suite A
Ridgeland, MS 39157
(601)898-2073 phone
(601)898-2074 facsimile

# COMMON POLICY DECLARATIONS

IL DS 00 07 02

Policy Number. ASA30866

| | |
|---|---|
| QBEINSURANCE CORPORATION<br>88 PINE ST NEW YORK, NY 10005<br>HOME:   1515 MARKET STREET<br>OFFICE: PHILADELPHIA, PA 19102 | MCGRIFF SEIBELS & WILLIAMS<br>P.O. BOX 10265   G361<br>2211 7TH AVENUE SOUTH<br>BIRMINGHAM          AL       35202-0265 |

| | |
|---|---|
| NAMED INSURED: | H & H WELDING, LLC<br>SEE SY101 |
| MAILING ADDRESS: | P.O. BOX 2206<br>LAUREL                    MS       39442 |
| POLICY PERIOD: | FROM: 03/13/2009    TO: 02/26/2010    AT 12:01 A.M. STANDARD<br>TIME AT YOUR MAILING ADDRESS  SHOWN ABOVE. |

BUSINESS DESCRIPTION: **WELDING**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ NOT COVERED |
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ ▮▮▮▮▮ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ NOT COVERED |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ NOT COVERED |
| COMMERCIAL PROPERTY COVERAGE PART | $ NOT COVERED |
| CRIME AND FIDELITY COVERAGE PART | $ NOT COVERED |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ |
| FARM COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| POLLUTION LIABILITY COVERAGE PART | $ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ |
| | $ |
| TOTAL: | $ ▮▮▮▮▮ |

Premium shown is payable: $ ▮▮▮▮▮                    at inception

$ CGS  4/21/09

| Forms applicable to all Coverage Parts: | | | |
|---|---|---|---|
| IL 00 17 11 98 | IL 00 21 07 02 | IL 02 82 12 06 | QBIL-0124 09 04 |
| CA DS 03 03 06 | SY 01 01 95 | ANC 102 | MCS 90 |

| | |
|---|---|
| Countersigned: | By: |
| (Date) | (Authorized Representative) |

IL DS 00 07 02

© ISO Properties, Inc., 2001

Insured's Copy

Page 1 of 1


EXHIBIT
A



# Notice to Policyholders
# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

**PLEASE READ THIS NOTICE CAREFULLY**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

> ➤ Foreign agents;
> ➤ Front organizations;
> ➤ Terrorists;
> ➤ Terrorist organizations; and
> ➤ Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



# NOTICE TO POLICYHOLDERS
## BROADENINGS, RESTRICTIONS AND CLARIFI-
## CATIONS OF AUTO COVERAGE

This notice does **not** form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Please read your policy, and endorsements attached to your policy, carefully.

## COVERAGE FORM CHANGES

### BROADENINGS IN COVERAGE

**CA 00 01 03 06 - Business Auto Coverage Form**
**CA 00 10 03 06 - Business Auto Physical Damage Coverage Form**

♦ Coverage for transportation expenses and loss of use expenses under Physical Damage Coverage are increased from $15 per day /$450 maximum to $20 per day/$600 maximum.

♦ Coverage for covered pollution cost or expense is broadened to include any cost or expense arising out of a statutory or regulatory requirement.

♦ The definitions of "auto" and "mobile equipment" have been revised. Any land vehicle that may have qualified as mobile equipment under your previous policy will now be considered an auto if that vehicle is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. With this change, coverage is provided for these types of land vehicles in the same manner as autos under the Commercial Auto program. However the operation of any machinery or equipment that is on, attached to or part of these vehicles will be excluded, as stated in the revised "Operations" exclusion contained in Section I – Liability Coverage of your policy, since such operations coverage will continue to be available under a Commercial General Liability Policy.

### CLARIFICATIONS OR NO IMPACT IN COVERAGE

All Commercial Auto Coverage Forms contain minor editorial revisions to provide for consistency among policies. Additionally, these coverage forms have been revised to include other various revisions which serve to clarify coverage. The changes to each coverage form are described below:

**CA 00 01 03 06 - Business Auto Coverage Form**
**CA 00 10 03 06 - Business Auto Physical Damage Coverage Form**

♦ The Limits of Insurance provisions in the Physical Damage Coverage section have been revised to clarify the intent that loss payment for repair or replacement does not include any payment for betterment, and that adjustments will be made for depreciation and physical condition in determining actual cash value in the event of a total loss. (Not applicable in all states.)

♦ We have introduced a Diminution In Value exclusion to the Physical Damage Coverage to clarify that the Coverage Forms do not provide for payment of any loss in market value, as loss in market value is not a component of direct and accidental loss or damage as provided in the policy's definition of "loss". (Not applicable in all states.)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

♦   All of the coverage forms have been revised to incorporate, where appropriate and with updated amounts for
transportation and loss of use expenses, the provisions of mandatory endorsement CA 00 22 - Changes in
Commercial Auto Coverage Forms which have been withdrawn.

♦   All coverage forms have been revised to clarify that sales tax for a damaged or stolen vehicle is considered
part of the total loss settlement.

**CA 00 01 03 06 - Business Auto Coverage Form**
♦   The definition of "temporary worker" has been amended for consistency with the Commercial General Liability
(CGL) policy.

♦   The "covered pollution cost or expense" definition is revised for consistency with the language used in the
"clean-up" costs portion of the Pollution Exclusion Applicable To Garage Operations – Other Than Covered
Autos contained in the Garage Coverage Form.

♦   The Supplementary Payments Provision has been amended to expressly state that these payments will not
reduce the Limit of Insurance.

♦   We have incorporated the war exclusion (formerly added via Endorsement **CA 00 38** or **CA 00 40**) directly into
these coverage forms.

♦   We have introduced new coverage symbols with respect to mobile equipment subject to compulsory or finan-
cial responsibility laws or other motor vehicle insurance laws.

**CA 00 10 03 06 - Business Auto Physical Damage Coverage Form**
♦   The quotes around the terms "insured", "suit" and "trailer" have been eliminated since these are not defined
terms in this form.

♦   Definitions for "employee", "leased worker" and "temporary worker" have been added.

# MULTISTATE ENDORSEMENTS

## BROADENINGS OF COVERAGE

**CA 20 11 03 06 – Leasing Or Rental Concerns – Exclusion Of Certain Leased Autos**
♦   The application of the exclusion for certain "leased autos", as defined in the endorsement, has been narrowed
to apply only to bodily injury or property damage resulting from the acts or omissions of the lessee or rentee,
the lessee's or rentee's employees or any person, except for the named insured or the named insured's em-
ployees or agents, operating a "leased auto" with the permission of certain individuals.

**CA 20 70 10 01 - Coverage For Certain Operations In Connection With Railroads**
♦   This new endorsement has been created to provide automobile coverage for liability of a railroad assumed by
an insured when a Railroad Liability Protection Policy has neither been purchased by the insured nor re-
quested by the railroad.

**CA 20 71 10 01 - Auto Loan/Lease Gap Coverage**
♦   This new optional endorsement provides coverage for any outstanding indebtedness incurred by an insured in
the event there is a total loss to the vehicle and the amount due under the financial agreement is greater than
the actual cash value of the vehicle.

**CA 99 37 03 06 – Garagekeepers Coverage**
**CA 99 59 03 06 – Garagekeepers Coverage – Customers' Sound Receiving Equipment**
♦   An exception to the exclusion pertaining to liability resulting from any agreement by which the insured accepts
responsibility for loss has been added. This exception indicates that this exclusion does not apply to liability
for loss that the insured would have in the absence of the contract or agreement.

**CA 99 90 03 06 - Optional Limits - Loss Of Use Expenses**
♦   This new optional endorsement provides coverage for loss of use expenses at limits other than the amount
provided in the coverage form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## REDUCTIONS IN COVERAGE

**CA 20 01 03 06 – Lessor – Additional Insured And Loss Payee**
◆  With respect to a "leased auto", as defined in **CA 20 01**, this endorsement has been revised to narrow coverage for the lessor under your policy to bodily injury or property damage resulting from the acts or omissions of you or your employees or agents, and anyone, except the lessor or lessor's employees or agents, operating a "leased auto" with your, or your employees' or agents', permission.

**CA 23 94 03 06 – Silica Or Silica-Related Dust Exclusion For Covered Autos Exposure**
◆  When this endorsement is attached to your policy, coverage is excluded for bodily injury liability arising in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, silica or silica-related dust. In addition, coverage is excluded for property damage liability arising in whole or in part, out of actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, silica or silica-related dust. Coverage is also excluded for any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, silica or silica-related dust.

**CA 99 60 03 06– Audio, Visual And Data Electronic Equipment Coverage**
◆  The deductible amount for this coverage has been raised from $100 to $250. Additionally, the Limit Of Insurance Provision has been revised to reference the amount shown in the Schedule of this endorsement.

## CLARIFICATIONS AND OTHER EDITORIAL REVISIONS

**CA 99 03 03 06 – Auto Medical Payments Coverage**
**CA 99 37 03 06 – Garagekeepers Coverage**
**CA 99 59 03 06 – Garagekeepers Coverage – Customers' Sound Receiving Equipment**
◆  We have incorporated the war exclusion (formerly added via Endorsement CA 00 38 or CA 00 40) directly into these endorsements.

**CA 99 37 03 06 – Garagekeepers Coverage**
**CA 99 59 03 06 – Garagekeepers Coverage – Customers' Sound Receiving Equipment**
◆  The Supplementary Payments Provision has been amended to expressly state that these payments will not reduce the Limit of Insurance.

**CA 03 01 03 06 – Deductible Liability Insurance**
**CA 03 02 03 06 – Deductible Liability Insurance**
◆  The bodily injury "per person" and "per accident" deductible options have been removed from these endorsements, as the option to provide Liability coverage on a split limits basis is not available.

**CA 20 01 03 06 – Lessor – Additional Insured And Loss Payee**
◆  The reference to Personal Injury Protection Coverage (or equivalent no-fault coverage) has been removed from the Schedule of this endorsement, as it is not the intent of this form to provide such coverage to the lessor.
◆  The title has been changed from "Additional Insured – Lessor" to "Lessor – Additional Insured And Loss Payee" to more closely track with the purpose of this endorsement.

**CA 20 12 10 01 – Leasing Or Rental Concerns - Rent It Here/Leave It There**
◆  The title has been changed to "Leasing Or Rental Concerns -Rent-It-There/Leave-It-Here" to more closely track with the purpose of the endorsement.

**CA 20 13 10 01 – Leasing Or Rental Concerns - Schedule Of Limits For Owned Autos**
◆  Reference to the Business Auto Physical Damage Coverage Form has been removed as this endorsement is only intended to modify liability coverage.

**CA 20 15 12 04 – Mobile Equipment**
**CA 20 33 10 01 – Autos, Leased, Hired, Rented Or Borrowed With Drivers - Physical Damage Coverage**
◆  The schedules have been revised to delete the $25 deductible in favor of a deductible in the amount of the insured's choice for Specified Causes Of Loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CA 20 54 10 01 – Employee  Hired Autos**
- Additional text has been added to the lead-in for consistency with other forms in the Commercial Auto forms portfolio.
- The paragraph reference for the Other Insurance - Primary And Excess  Insurance Provisions condition in the Motor Carrier Coverage Form has been corrected to refer to 5.f.
- The word "contact" has been changed to "contract" in paragraph B.2.

**CA 20 78 03 06 – Physical Damage Coverage – Autos Held For Sale By Non-Dealers**
- The Quarterly or Monthly reporting basis option has been removed from this endorsement as this option is not available for non-dealers.

**CA 23 24 10 01 – Agricultural Produce Trailers - Seasonal**
- The reference to " 'trailers' with a gross vehicle weight of 2000  pounds  or more" has been revised to read " 'trailers' with a load capacity exceeding 2000 pounds".  This change has been made for consistency with the underlying coverage forms which provide automatic coverage for trailers with a load capacity of 2000 pounds or less.

**CA 99 17 03 06 – Individual Named Insured**
- Since the Garage Coverage Form is now intended for auto dealer risks only, the reference to this coverage form has been removed from the list of insurance being modified by this endorsement. Endorsement **CA 99 18 – Individual Named Insured – Dealers Only** is the proper form to use for auto dealer risks.
- The paragraphs pertaining to Personal Auto Coverage under both Changes In Liability Coverage and Changes In Physical Damage have been revised to change the phrase "*While* any auto you own.." to "*If* any auto you own..." to avoid ambiguity as to the meaning of the word "while".

**CA 99 30 10 01 – Tapes, Records And Discs Coverage**
- Clarifies that the "tapes, records and discs" exclusion of the Physical Damage Coverage Section does not apply.
- Incorporates a few formatting and editorial changes for consistency with other endorsements in the Commercial Auto forms portfolio.

**CA 99 37 03 06 – Garagekeepers Coverage**
- Clarifies the deductibles shown in the schedule for Comprehensive and Specified Causes of Loss by indicating that a maximum deductible applies to loss caused by either theft, mischief or vandalism; or all perils.
- Adds reference to "customer's auto equipment" in the lead-in of paragraph B.3. Who Is An Insured for consistency with the insuring agreement contained in B.1.
- Amends paragraph D. Limit of Insurance And Deductible to reference the "all-perils" deductible option.
- The Limit Of Insurance And Deductible Provision has been revised to more clearly convey the application of the deductibles based on the way they are shown in the Schedule or Declarations. Additionally, the title of this provision was editorially revised.

**CA 99 60 03 06 - Audio, Visual And Data Electronic Equipment Coverage**
- The Schedule of this endorsement has been revised to add a column in which the Limits of Insurance for this coverage can be identified. Additionally, a note has been included directly under the Schedule of this endorsement to indicate that the amount shown in the Schedule may not necessarily be the amount you receive at the time of loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rigths And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc. 1998

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:
      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;
      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by, or on behalf of an "insured"; or
      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

2.  As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

IL 00 21 07 02

IL 02 82 12 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISSISSIPPI CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **7.** is added to the **Cancellation** Common Policy Conditions:

**7.** If:

**a.** The first Named Insured cancels this policy, we will notify any named creditor loss payee.

**b.** We cancel this policy, we will mail or deliver our written notice of cancellation to any named creditor loss payee in the same manner and at the same time as notification is given to the first Named Insured, as stated in this Condition.

The provisions of Paragraphs **a.** and **b.** above do not apply to any mortgageholder.

**B.** Paragraphs **f.** and **g.** of the **Mortgageholders** Condition, if any, are replaced by the following:

**f.** If:

**(1)** The first Named Insured cancels this policy, we will notify the mortgageholder.

**(2)** We cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

We will notify the mortgageholder by mailing or delivering the cancellation notice to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**g.** If:

**(1)** The first Named Insured does not renew this policy, we will notify the mortgageholder.

**(2)** We decide not to renew this policy, we will give written notice to the mortgageholder at least:

**(a)** 10 days before an anniversary date or the expiration date of the policy, if the nonrenewal is due to nonpayment of premium; or

**(b)** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason

We will notify the mortgageholder by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** The following Condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If the first Named Insured does not renew this policy, we will notify any named creditor loss payee.

© ISO Properties, Inc., 2006

**2.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any named creditor loss payee, at least:

    **a.** 10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

    **b.** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

We will notify the first Named Insured and any named creditor loss payee, by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

The provisions of Paragraphs **1.** and **2.** above do not apply to any mortgageholder.

**D.** The requirements for notification of cancellation or nonrenewal of this policy, as stated in Paragraphs **A.**, **B.** and **C.** above, supersede any other notification requirements to any named creditor loss payee and any mortgageholder, stated in this policy, including any endorsement attached to the policy.

**E.** Any named creditor loss payee and any mortgageholder may elect not to receive notification of cancellation or nonrenewal by providing us with a written release.

© ISO Properties, Inc., 2006
IL 02 82 12 06   ☐

INTERLINE
QBIL-0124 (09-04)



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLLUTANTS DEFINITION AMENDMENT

All Coverage Parts or Coverage Forms included in this policy are subject to the following:

The definition of "pollutants" is replaced in its entirety by the following:

"Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor soot, fumes, acids, alkalis, radiation or radioactive contamination, dioxins, polychlorinated biphenols, pathogenic or poisonous biological or chemical materials and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

COMMERCIAL AUTO
CA DS 03 03 06

POLICY NUMBER:  ASA30866

# BUSINESS AUTO DECLARATIONS

| | |
|---|---|
| QBEINSURANCE CORPORATION<br>88 PINE ST NEW YORK, NY 10005<br>HOME:   1515 MARKET STREET<br>OFFICE:  PHILADELPHIA, PA 19102 | MCGRIFF SEIBELS & WILLIAMS                    -<br>P.O. BOX 10265    G361<br>2211 7TH AVENUE SOUTH<br>BIRMINGHAM                          AL      35202  0265 |

**ITEM ONE**

**Named Insured:**        H & H WELDING, LLC
                           SEE SY101
**Mailing Address:**     P.O. BOX 2206
                           LAUREL                    MS      39442

**Policy Period:**    **From** 03/13/2009      **To** 02/26/2010       At 12:01 A.M. Standard Time at your mailing address.

**Previous  Policy Number:**

**Form Of Business:**

☒ Corporation        ☐ Limited Liability Company        ☐ Individual
☐ Partnership        ☐ Other:

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| |
|---|
| Premium shown is payable at inception:  $ ▓▓▓▓▓▓ |
| Audit Period (If Applicable):      ☒ Annually      ☐ Semi-Annually      ☐ Quarterly      ☐ Monthly |

| Endorsements Attached To This Policy: |
|---|
| IL 00 17 - Common Policy Conditions (IL 01 46 in Washington)<br>IL 00 21 - Broad Form Nuclear Exclusion (Not applicable in New York) |

| | | | |
|---|---|---|---|
| CA 00 01 03 06 | CA 21 80 03 06 | CA 23 84 01 06 | CA 99 03 03 06 |
| CA 99 44 12 93 | | | |

| Countersignature Of Authorized Representative |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

**Note**
Officers' facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos | Limit | Premium |
|---|---|---|---|
| Liability | 1 | $ 1,000,000 | $ ▓▓▓ |
| Personal Injury Protection (Or Equivalent No-Fault Coverage) | | Separately Stated In Each Personal Injury Protection Endorsement Minus $     Deductible. | $ |
| Added Personal Injury Protection (Or Equivalent Added No-Fault Coverage) | | Separately Stated In Each Added Personal Injury Protection Endorsement. | $ |
| Property Protection Insurance (Michigan Only) | | Separately Stated In The Property Protection Insurance Endorsement Minus $    Deductible For Each Accident. | $ |
| Auto Medical Payments | 7 | $ 5,000 | $ ▓▓▓ |
| Medical Expense And Income Loss Benefits (Virginia only) | | Separately Stated In Each Medical Expense And Income Loss Benefits Endorsement. | $ |
| Uninsured Motorists | 7 | $ 750     *In Thousands | $ ▓▓ |
| Underinsured Motorists (When Not Included In Uninsured Motorists Coverage) | | $ INCL     *In Thousands | $ |
| Physical Damage Comprehensive Coverage | 7,8 | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus $(See Sched) Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lighting.  See Item Four For Hired Or Borrowed Autos. | $ ▓▓▓ |
| Physical Damage Specified Causes Of Loss Coverage | | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $    Deductible For Each Covered Auto For Loss Caused By Mischief Or Vandalism.  See Item Four For Hired Or Borrowed Autos. | $ |
| Physical Damage Collision Coverage | 7,8 | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ (See   Deductible For Each Covered Auto.  See Item Four For Hired Or Borrowed "Autos". | $ ▓▓▓ |
| Physical Damage Towing And Labor | | $     For Each Disablement Of A Private Passenger Auto. | $ |
| | | | $ |
| | | Premium For Endorsements | $ |
| | | Estimated Total Premium* | $ ▓▓▓ |
| *This Policy May Be Subject To Final Audit. | | | |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.     CA DS 03 03 06
Insured's Copy

**ITEM THREE**
**Schedule Of Covered Autos You Own**

| Covered Auto Number | Description (Year, Model, Trade Name, Body Type Serial Number (S), Vehicle Identification Number (VIN)) | | | | Purchased: Original Cost New | Actual Cost New (N) Or Used (U) | Town And State Where The Covered Auto Will Be Principally Garaged | |
|---|---|---|---|---|---|---|---|---|
| 1 | 2001 | FORD | F350 PU | 6553 | 20500 | | ELLISVILLE (011) | MS |
| 2 | 2004 | FORD | F350 PU | 2320 | 25000 | | | MS |
| 3 | 2005 | PETERBILT | TRACTOR | 8785 | 90000 | | | MS |
| 4 | 2005 | WSTERN | TRACTOR | 5821 | 80000 | | | MS |
| 5 | 2004 | WSTERN | TRACTOR | 1379 | 90000 | | | MS |

| Covered Auto Number | Classification | | | | Primary Rating Factor | | | | | Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below As Interests May Appear At the Time Of The Loss. |
|---|---|---|---|---|---|---|---|---|---|---|
| | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVW, GCW Or Vehicle Seating Capacity | Age Group | Liab. | Phy. Dam. | Secondary Rating Factor | Code | | |
| 1 | LOCAL-FLT | S | MEDIUM | 6 | | | 0.00 | 21499 | | |
| 2 | LOCAL-FLT | S | LIGHT | 6 | | | 0.00 | 01499 | | |
| 3 | LDIST-FLT | | EX-HVY T-TRACT | 5 | | | 0.00 | 50699 | | |
| 4 | LDIST-FLT | | EX-HVY T-TRACT | 5 | | | 0.00 | 50699 | | |
| 5 | LDIST-FLT | | EX-HVY T-TRACT | 6 | | | 0.00 | 50699 | | |

| Covered Auto Number | Coverages - Premiums, Limits And Deductibles (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Liability | | Personal Injury Protection | | Added Personal Injury Protection | Property Protection Insurance (Michigan Only) | | |
| | Limit | Premium | Limit Stated In Each Personal Injury Protection Endorsement Minus Deductible Shown Below | Premium | Limit Stated In Each Added Personal Injury Protection Endorsement | Limit Stated In The Property Protection Insurance Endorsement Minus Deductible Shown Below | Premium | |
| 1 | $ | $ ███ | $ | $ | $ 0.0000 | $ | $ | |
| 2 | $ | $ | $ | $ | $ 0.0000 | $ | $ | |
| 3 | $ | $ ███ | $ | $ | $ 0.0000 | $ | $ | |
| 4 | $ | $ ███ | $ | $ | $ 0.0000 | $ | $ | |
| 5 | $ | $ ███ | $ | $ | $ 0.0000 | $ | $ | |
| Total Premiums | | $ ███ | | $ | $ | | $ | |

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. Insured's Copy

**ITEM THREE**
**Schedule Of Covered Autos You Own  (Cont'd)**

| Covered Auto Number | Coverages - Premiums, Limits And Deductibles (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | | | |
|---|---|---|---|---|---|
| | Auto Medical Payments | | Medical Expense And Income Loss Benefits (Virginia Only) | | |
| | LIMIT | Premium | Limit Stated In Each Medical Expense And Income Loss Benefits Endorsement For Each Person | Premium | |
| 1 | $ | $ ▬▬ | $ | $ | |
| 2 | $ | $ | $ | $ | |
| 3 | $ | $ ▬▬ | $ | $ | |
| 4 | $ | $ ▬▬ | $ | $ | |
| 5 | $ | $ ▬▬ | $ | $ | |
| Total Premiums | | $ ▬▬ | | $ | |

| Covered Auto Number | Coverages - Premiums, Limits And Deductibles (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Comprehensive | | Specified Causes Of Loss | | Collision | | Towing And Labor | |
| | Limit Stated In Item Two Minus Deductible Shown Below | Premium | Limit Stated In Item Two Minus Deductible Shown Below | Premium | Limit Stated In Item Two Minus Deductible Shown Below | Premium | Limit Per Disablement | Premium |
| 1 | $ 1000 | $ ▬▬ | $ | $ | $ 1000 | $ 190 | $ | $ |
| 2 | $ 1000 | $ ▬▬ | $ | $ | $ 1000 | $ 238 | $ | $ |
| 3 | $ 3000 | $ ▬▬ | $ | $ | $ 3000 | $ 1054 | $ | $ |
| 4 | $ 3000 | $ ▬▬ | $ | $ | $ 3000 | $ 1054 | $ | $ |
| 5 | $ 3000 | $ ▬▬ | $ | $ | $ 3000 | $ 828 | $ | $ |
| Total Premiums | | $ ▬▬ | | $ | | $ 14990 | | $ |

**ITEM FOUR**
**Schedule  Of Hired Or Borrowed Covered Auto Coverage And Premiums**

| Liability Coverage - Rating Basis, Cost Of Hire | | | | |
|---|---|---|---|---|
| State | Estimated Cost Of Hire For Each State | Rate Per Each $100 Cost Of Hire | Factor (If Liability Coverage Is Primary) | Premium |
| MS | $      IF ANY | $      0.693 | | $ ▬▬ |
| | $ | $ | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |
| | $ | $ | | $ |

| Liability Coverage - Rating Basis, Number Of Days - (For Mobile Or Farm Equipment - Rental Period Basis) | | | | |
|---|---|---|---|---|
| State | Estimated Number Of Days Equipment Will Be Rented | Base Premium | Factor | Premium |
| MS | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | | | Total Premium | $ ▬▬ |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Insured's Copy
CA DS 03 03 06

**ITEM FOUR**
**Schedule  Of Hired Or Borrowed Covered Auto Coverage And Premiums (Cont'd)**

**Physical Damage Coverage**

| Coverages | Limit Of Insurance | Estimated Annual Cost Of Hire | Rate Per Each $100 Annual Cost Of Hire | Premium |
|---|---|---|---|---|
| **Comprehensive** | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $          Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lighting. | $ | $ | $ ▬ |
| **Specified Causes Of Loss** | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $          Deductible For Each Covered Auto For Loss Caused By Mischief Or Vandalism. | $ | $ | $ |
| **Collision** | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ Deductible For Each Covered Auto. | $ | $ | $ ▬ |
| | | | **Total Premium:** | $ ▬ |

**ITEM FIVE**
**Schedule  For Non-Ownership Liability**

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number of Employees | 29 | $ ▬ |
| | Number of Partners | | $ |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| Social Service Agencies | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | **Total Premiums** | | $ ▬ |

**ITEM SIX**
**Schedule For Gross Receipts Or Mileage Basis - Liability Coverage - Public Auto Or Leasing Rental Concerns**

| Estimated Yearly<br>☐ Gross Receipts<br>☐ Mileage | Rates<br>☐ Per $100 of Gross Receipts<br>☐ Per Mile | | | | Premiums | | | |
|---|---|---|---|---|---|---|---|---|
| | Liability | Auto Medical Payments | Medical Expense Benefits (VA Only) | Income Loss Benefits (VA Only) | Liability | Auto Medical Payments | Medical Expense Benefits (VA Only) | Income Loss Benefits (VA Only) |
| Location No: | $ | $ | $ | $ | $ | $ | $ | $ |
| Location No: | $ | $ | $ | | $ | $ | $ | $ |
| Location No: | $ | $ | $ | $ | $ | $ | $ | $ |
| Total Premiums | | | | | $ | $ | $ | $ |
| Minimum Premiums | | | | | $ | $ | $ | $ |

| Location Number | Address |
|---|---|
| | |
| | |
| | |

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross receipts does not include:

  **A.** Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.
  **B.** Advertising revenue.
  **C.** Taxes which you collect as a separate item and remit directly to a government division.
  **D.** C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross Receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during the policy period.

COMMERCIAL AUTO
CA 00 01 03 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A.  Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|:---:|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

   © ISO Properties, Inc., 2005

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:
   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and
   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. "Loss"; or
   e. Destruction.

**SECTION II - LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":
   a. You for any covered "auto".
   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
      (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

    © ISO Properties, Inc., 2005    **CA 00 01 03 06**

    **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

    **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

    **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

    **(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

  **c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

  **a. Supplementary Payments**

    We will pay for the "insured":

    **(1)** All expenses we incur.

    **(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

    **(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

    **(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

    **(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

    **(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

    These payments will not reduce the Limit of Insurance.

  **b. Out-Of-State Coverage Extensions**

    While a covered "auto" is away from the state where it is licensed we will:

    **(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

    **(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

    We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

  **a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

  **b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

  **a.** An "employee" of the "insured" arising out of and in the course of:

    **(1)** Employment by the "insured"; or

    (2) Performing the duties related to the con-
       duct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister
   of that "employee" as a consequence of
   Paragraph **a.** above.

This exclusion applies:

    (1) Whether the "insured" may be liable as
       an employer or in any other capacity;
       and

    (2) To any obligation to share damages with
       or repay someone else who must pay
       damages because of the injury.

But this exclusion does not apply to "bodily in-
jury" to domestic "employees" not entitled to
workers' compensation benefits or to liability
assumed by the "insured" under an "insured
contract". For the purposes of the Coverage
Form, a domestic "employee" is a person en-
gaged in household or domestic work per-
formed principally in connection with a resi-
dence premises.

**5. Fellow Employee**

Bodily injury" to any fellow "employee" of the
"insured" arising out of and in the course of the
fellow "employee's" employment or while per-
forming duties related to the conduct of your
business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost
or expense" involving property owned or trans-
ported by the "insured" or in the "insured's"
care, custody or control. But this exclusion
does not apply to liability assumed under a
sidetrack agreement.

**7. Handling Of Property**

Bodily injury" or "property damage" resulting
from the handling of property:

**a.** Before it is moved from the place where it is
   accepted by the "insured" for movement
   into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to
   the place where it is finally delivered by the
   "insured".

**8. Movement Of Property By Mechanical
Device**

"Bodily injury" or "property damage" resulting
from the movement of property by a mechani-
cal device (other than a hand truck) unless the
device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out
of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.**
   and **6.c.** of the definition of "mobile equip-
   ment"; or

**b.** Machinery or equipment that is on, attached
   to, or part of, a land vehicle that would qual-
   ify under the definition of "mobile equip-
   ment" if it were not subject to a compulsory
   or financial responsibility law or other motor
   vehicle insurance law where it is licensed or
   principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out
of your work after that work has been com-
pleted or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on
   your behalf; and

**b.** Materials, parts or equipment furnished in
   connection with such work or operations.

Your work includes warranties or representa-
tions made at any time with respect to the fit-
ness, quality, durability or performance of any
of the items included in Paragraph **a.** or **b.**
above.

Your work will be deemed completed at the
earliest of the following times:

    (1) When all of the work called for in your
       contract has been completed.

    (2) When all of the work to be done at the
       site has been completed if your contract
       calls for work at more than one site.

    (3) When that part of the work done at a job
       site has been put to its intended use by
       any person or organization other than
       another contractor or subcontractor
       working on the same project.

Work that may need service, maintenance, cor-
rection, repair or replacement, but which is oth-
erwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out
of the actual, alleged or threatened discharge,
dispersal, seepage, migration, release or es-
cape of "pollutants":

**a.** That are, or that are contained in any prop-
   erty that is:

    (1) Being transported or towed by, handled,
       or handled for movement into, onto or
       from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III - PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV - BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concern-ing:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5.  **Other Insurance**

   a.  For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      (1) Excess while it is connected to a motor vehicle you do not own.

      (2) Primary while it is connected to a covered "auto" you own.

   b.  For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   c.  Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   d.  When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6.  **Premium Audit**

   a.  The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b.  If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7.  **Policy Period, Coverage Territory**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a.  During the policy period shown in the Declarations; and

   b.  Within the coverage territory.

   The coverage territory is:

   a.  The United States of America;

   b.  The territories and possessions of the United States of America;

   c.  Puerto Rico;

   d.  Canada; and

   e.  Anywhere in the world if:

      (1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      (2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

   We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8.  **Two Or More Coverage Forms Or Policies Issued By Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V - DEFINITIONS**

A.  "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B.  "Auto" means:

   1.  A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **a.** That are, or that are contained in any property that is:

      **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

      **(2)** Otherwise in the course of transit by or on behalf of the "insured";

      **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

   **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

      **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

      **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

      **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

      **(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;
2. A sidetrack agreement;
3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraph 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

© ISO Properties, Inc., 2005

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged. "Suit" includes:

     **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

     **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© ISO Properties, Inc., 2005
CA 00 01 03 06

POLICY NUMBER:   ASA30866

COMMERCIAL AUTO
CA 21 80 03 06

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISSISSIPPI UNINSURED MOTORISTS COVERAGE BODILY INJURY AND PROPERTY DAMAGE – NONSTACKED

For a covered "motor vehicle" licensed or principally garaged in, or "garage operations" conducted in, Mississippi, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| |
|---|
| **Named Insured:**  H & H WELDING, LLC |
| **Endorsement Effective Date:** |

| **Countersignature Of Authorized Representative** |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

### SCHEDULE

| Limit Of Insurance: | Each "Accident" |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle".

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "auto" is principally garaged, we will pay only after all liability bonds or policies have been exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

© ISO Properties, Inc., 2005

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   d. Any person who uses a covered "auto" with the Named Insured's expressed or implied consent.

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   c. Any person who uses a covered "auto" with the Named Insured's expressed or implied consent.

   d. The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled with the owner or operator of the "uninsured motor vehicle" without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. Property contained in or struck by any vehicle owned by the Named Insured, or if the Named Insured is an individual, any "family member" which is not a covered "auto".

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. The first $200 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

7. Punitive or exemplary damages.

8. "Bodily injury" or "property damage" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form, or any Medical Payments Coverage Endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

3. We will not pay for "property damage" that is paid or payable under Physical Damage Coverage.

## E. Changes In Conditions

The **Conditions** are changed for Mississippi Uninsured Motorists Coverage – Non-Stacked as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are changed by addition of the following:

   a. The reference to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

© ISO Properties, Inc., 2005           □

b. Any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form, shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   We shall be entitled to recovery only after the "insured" has been fully compensated for damages.

4. **Two Or More Coverage Forms Or Policies Issued By Us** does not apply.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury to or destruction of:

   a. A covered "auto";

   b. Property contained in the covered "auto" and owned by the Named Insured, or if the Named Insured is an individual, any "family member"; or

   c. Property contained in the covered "auto" and owned by anyone else "occupying" the covered "auto".

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but their limits are less than the sum of:

      (1) The limit of liability for uninsured motorists coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident", and

      (2) Any other limit of liability for uninsured motorists coverage applicable to the "insured" as a named insured or "family member";

   c. For which the sum of all bonds or deposits of cash or securities at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but their limits are insufficient to pay the full amount the "insured" is legally entitled to recover as damages;

   d. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   e. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

   However, an "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law;

   b. Owned by a governmental unit or agency; or

   c. Designed for use mainly off public roads while not on public roads.

© ISO Properties, Inc., 2005

COMMERCIAL AUTO
CA 23 84 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

CA 23 84 01 06

© ISO Properties, Inc., 2004

Page 1 of 3     □

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

© ISO Properties, Inc., 2004

·With respect to this Exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the Exclusion in Paragraphs **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

COMMERCIAL AUTO
CA 99 03 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".
2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.
2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.
3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".
4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.
5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.
6. "Bodily injury" arising directly or indirectly out of:
   a. War, including undeclared or civil war;
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

© ISO Properties, Inc., 2005

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations. No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

© ISO Properties, Inc., 2005
CA 99 03 03 06

COMMERCIAL AUTO
CA 99 44 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto."

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

          Copyright, Insurance Services Office, Inc., 1993

# COMMERCIAL COVERAGE

## CHANGE ENDORSEMENT

IF THE FOLLOWING INFORMATION IS NOT COMPLETED, REFER TO THE APPROPRIATE DECLARATIONS ATTACHED TO THE POLICY.

| INSURED | POLICY NUMBER | |
|---|---|---|
| H & H WELDING, LLC | ASA30866 | |
| PRODUCER | LINE OF BUSINESS | EFFECTIVE DATE |
| MCGRIFF SEIBELS & WILLIAMS | AU | 03/13/09 |

## DECLARATIONS

THE PREMIUM FOR THIS POLICY AMENDMENT IS INCLUDED IN THE PREMIUM SHOWN ON THE GENERAL DECLARATIONS UNLESS A SPECIFIC AMOUNT IS SHOWN HERE:

☐ ADDITIONAL PREMIUM _____        ☐ RETURN PREMIUM _____

NAMED INSURED READS AS FOLLOWS

H & H WELLDING, LLC.
H & H TRANSPORTATION, LLC
H & H HARDBANDING AND INSPECTION, LLC
H & H CONSTRUCTION, LLC

SY 01 01 95                                                                                    1 of 1

**BUSINESS AUTO**
**ANC 102**

**POLICY  NUMBER: ASA30866**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

   COMMERCIAL AUTOMOBILE COVERAGE PART

SCHEDULE

**NAME OF PERSON OR ORGANIZATION:**

**BLANKET AS REQUIRED BY CONTRACT**

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV –**

**BUSINESS AUTO CONDITIONS)  is amended by the addition of the following:**

**We waive any right of recovery we may have against the person or organization show in the**

**Schedule above because of payments we make for damage arising out of your ongoing**

**operations or "your work" done under a contract with that person or organization.  This**

**waiver applies only to the person or organization shown in the Schedule above.**

OMB No. 2126-0008

Public Burden Statement

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information is 2126-0008.  Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information.  All responses to this collection of information are mandatory.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20580.

U.S. Department of Transportation

Federal Motor Carrier Safety Administration

## ENDORSEMENT FOR
## MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
## UNDER SECTION 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to    H & H WELDING, LLC    of    5440 HIGHWAY 11, NORTH
ELLISVILLE, MS  39437

Dated at    8104 SEATON PLACE
MONTGOMERY, AL  36116    this    1ST    day of    JULY    20    10

Amending Policy No.    ASA30866-1    Effective Date    02/26/10

Name of Insurance Company:    QBE INSURANCE CORPORATION, 1515 MARKET STREET, PHILADELPHIA, PA  19102

Countersigned by

_Authorized Company Representative_

The policy to which this endorsement is attached provides primary or excess insurance indicated by "[X]", for the limits shown:

☒ This insurance is primary and the company shall not be liable for amounts in excess of $ 1,000,000  for each accident.

☐ This insurance is excess and the company shall not be liable for amounts in excess of $_____  for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA) the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date.  The telephone number to call is:  334-213-5678 .

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

### DEFINITIONS AS USED IN THIS ENDORSEMENT

ACCIDENT includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

MOTOR VEHICLE means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

BODILY INJURY means injury to the body, sickness, or disease to any person, including death resulting from any of these.

PROPERTY DAMAGE means damage to or loss of use of tangible property.

ENVIRONMENTAL RESTORATION means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier.  This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

PUBLIC LIABILITY means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration.

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment

of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.  However, all terms, conditions and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.  The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

THE SCHEDULE OF LIMITS SHOWN ON THE NEXT PAGE DOES NOT PROVIDE COVERAGE.

MCS-90 (Page 1 of 3)

The limits shown in the schedule are for infor     n purposes only..

## SCHEDULE OF LIMITS - *Public Liability*

| Type of Carriage | Commodity Transported | Jan. 1, 1985 |
|---|---|---|
| (1) For-hire (In interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous). | $ 750,000 |
| (2) For-hire and Private (In interstate, foreign or intrastate commerce with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Divisions 1.1, 1.2, and 1.3 materials; any quantity of Division 2.3 Hazard Zone A or Division 6.1, Packing Group 1, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |
| (3) For-hire and Private (In interstate or foreign commerce: in any quantity or in intrastate commerce: in bulk only; with a gross vehicle weight rating of 10,000 or more ponds). | Oil listed in 49 CFR 172.101, hazardous waste, hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) For-hire and Private (In interstate or foreign commerce with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group 1, Hazard Zone A material; or highway route controlled quantities of Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |

07/26/2010 15:40 FAX  205 581 9195        McGRIFF SEIBELS & WILLIA                    012/034

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
OF JASPER COUNTY, MISSISSIPPI

JONATHAN JONES                                                    **PLAINTIFF**

VS.                                                          NO. *19 - 0083*

MARCUS K. RUTLEDGE                                                **DEFENDANT**

## COMPLAINT FOR DAMAGES

### JURY TRIAL DEMANDED

Comes now **JONATHAN JONES**, Plaintiff, by and through counsel, and respectfully files this his Complaint seeking damages of, from and against the Defendant, **MARCUS K. RUTLEDGE** for injuries and damages sustained in a motor vehicle crash, and in support of same would show the following facts and matters, to-wit:

I

Plaintiff is an adult resident citizen of Jasper County, Mississippi, appearing with benefit of counsel. Defendant **MARCUS RUTLEDGE**  is an adult resident citizen of Clarke  County, Mississippi, who may be served with process at his place of residence, believed by Plaintiff to be 39 Lake Fiddins 163810, Pachuta, Mississippi 39437 or his place of employment, H and H Welding, 5440 Highway 11 North, Ellisville, Mississippi 39347.  Plaintiff respectfully requests service of process on Defendant by personnel of the appropriate Sheriff's Office, or by private process server.

II

Plaintiff would show that at approximately 1:38 o'clock P.M. on the afternoon of September 18, 2009, Plaintiff was operating his white Ford Taurus in a southerly direction on Jasper County Road LE 1638, stopped at a stop sign at the intersection of said LE 1638 and County Road 16, in Jasper County, Mississippi.

Page 1 of 3

FILED
JASPER COUNTY, MISS.
OCT 09 2009

Billy G. Rayner
CIRCUIT CLERK

EXHIBIT
**B**

### lll

That at all times herein complained of, Plaintiff was operating his vehicle in a safe, prudent, careful and cautious manner, keeping proper observation for other traffic, stopped at the "stop" sign at the intersection, keeping his vehicle under free, easy, safe and complete control, and obeying all laws and traffic regulations of the State of Mississippi.

### IV

That immediately preceding this collision, at the above stated time and place, Defendant, Marcus K. Rutledge, was operating his one-ton Ford welding truck, also traveling in a southerly direction on County Road LE 1638,approaching and overtaking Plaintiff from behind the Plaintiff.

### V

That at said time and place, Plaintiff's vehicle was suddenly and violently rear-ended by the one-ton truck driven and operated by the Defendant, Marcus K. Rutledge.

### VI

That at all times herein complained of, the Defendant, Marcus K. Rutledge did not have his vehicle under free, easy and safe control, but to the contrary was driving at a dangerous and excessive rate of speed; he did not keep due and proper lookout in regard for other users and occupiers of the roadway, including your Plaintiff; he did not slow his vehicle appropriately as he was approaching the Plaintiff's vehicle; he did not yield the right-of-way lawfully and properly occupied by Plaintiff; and he did not take proper action to avoid the collision, but allowed his vehicle to violently collide into the rear of Plaintiff's vehicle.

### VII

That all of the acts and inactions of Defendant Rutledge constitute negligence in the premises.

### VIII

That the negligence of the Defendant Marcus K. Rutledge, was the sole proximate cause of the collision and the resulting injuries to your Plaintiff.

Page 2 of 3

FILED
JASPER COUNTY, MISS.
OCT 0 9 2009

Billy G. Rayner
CIRCUIT CLERK

07/28/2010 15:40 FAX  205 581 9195      McGRIFF SEIBELS & WILLIA                    ☒ 014/034

IX

That Plaintiff suffered personal injuries and property damages in and arising out of this collision

X

That Plaintiff is entitled to recover all actual damages suffered, under every theory applicable to these facts, of, from and against the Defendant, Marcus K. Rutledge.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jonathan Jones demands judgment of, from and against the Defendant, Marcus K. Rutledge, in an amount that will adequately compensate him for all of his injuries and damages sustained, under every theory of law applicable to these facts; plus all costs of this proceeding; plus pre-judgment and post-judgment interest on the entire amount of judgment at a rate of ten percent per annum or such other or higher amount allowed by the Court.

Respectfully submitted,

JONATHAN JONES, Plaintiff

By: _____
        THOMAS Q. BRAME, JR.
        Attorney for Plaintiff

THOMAS Q. BRAME, JR.
The Brame Law Firm
2781 Highway 15
Post Office Box 301
Bay Springs, Mississippi 39422
Telephone: (601) 764-4355
Facsimile: (601) 764-4356
Mississippi State Bar Number 4287

FILED
JASPER COUNTY, MISS.

OCT 0 9 2009

Billy G. Rayner
CIRCUIT CLERK

Page 3 of 3

07/26/2010 15:38 FAX   205 581 9195     McGRIFF SEIBELS & WILLIA                 ☑ 006/034

## STATE OF MISSISSIPPI
## UNIFORM CRASH REPORT

Page **0 1** of **0 6**

**Answer Number:** 0 0 3 1 — 1 2 9 5

**Agency Name:** JASPER COUNTY SHERIFF OFFICE

G1. County: **3 1**

G2. Status Code: **C P U**

| G3. Reported Date (MM/DD/YYYY) | G4. Reported Time (2400) | Arrived Time (2400) | 18-24 Time (2400) | G6. Vehicles | G7. Killed | G8. Injured |
|---|---|---|---|---|---|---|
| 0 9 / 1 6 / 2 0 0 9 | 1 3 3 8 | 1 4 5 0 | 1 5 1 7 | 0 2 | 0 0 | 0 0 |

G9. Address Number: 
G10. Street Name: L E 1 6 3 8   1:38 PM

G11. Hwy/County Road #
G12. Traffic-way Direction: N E / S W

G13. Int: Y / N
G14. Distance:
G15. Direction: N E / S W
G16. Intersecting Street Name: C R 1 6
G17. Int. Hwy/County Road #

G18. Latitude: N 3 2 0 1 . 5 9 0
G19. City Name:
G20. Longitude: W 0 8 8 5 7 . 3 8 0

Rear and slow or stop
Rear end turn
Left turn same roadway
Left turn cross traffic
Right turn cross traffic
Head on
Sideswipe
Angle
Hit and run

O-ran on
Jackknife
Fell from vehicle
Other

Badge/Culvert
Embankment/Ditch/Curb
Guardrail/Median Barrier
Tree
Utility pole/light support
Other fixed object
Sign Post
Signal standard

Pedestrian
Parked Vehicle
Train
Bicycle
Deer
Animal (other than deer)

Building/Other Structure
Maint. Equip - Not Moving
Maint. Equip. - Moving
Other non-fixed object

Roadway
Off-Roadway
Median
Roadside
Shoulder
Parking Lot
Gore

None
Four-way total
T - Intersection
Crossover
Driveway
Five-points or more
Off Ramp
On Ramp
Path/Trail
RR Xing
Traffic Circle/Round-
Y - Intersection

City Street
State Highway
U.S. Highway
County Road
Parking Lot/Private Drive
Interstate
Off Road
State Park

Daylight
Dark-Lit
Dark-Unlit
Dawn
Dusk

Dry
Wet
Water
Sand/Mud/Dirt/Oil/Gravel
Ice
Slush
Snow

Clear
Rain
Cloudy
High winds

Blown Debris
Fog/Smog/Smoke
Sleet/Hail
Snow

Not Workzone Related
Within Construction Zone
Advance Warning Area

None
Intermittent or Moving Work
Lane Closure
Lane Shift/Crossover
Shoulder/Median Work
Utility

### WITNESS(ES)

G28. First Name:
M. Last Name:
G31. Address:
G33. Phone Number:
G35. City:
G34. State:
G35. Zip Code:
G36. Sex: M / F
G37. Age:

G38. First Name:
M. Last Name:
G39. Address:
G40. Phone Number:
G41. City:
G42. State:
G43. Zip Code:
G44. Sex: M / F
G45. Age:

G46. Badge Number: J A S 8   CHESTON CANNON
G47. Investigating Officer Name (Please Print):
G48. Officer Signature: *CHESTON CANNON*

G49. Reviewing Badge Number: 0 4
G50. Reviewing Officer Initials: J A W
G51. Photos Taken: Y / N
G52. Photographer and Badge #

9582404259

EXHIBIT

C

07/28/2010 15:38 FAX  205 581 9185       McGRIFF SEIBELS & WILLIA                    ☑007/034

| MUCR Diagram/Narrative | 0 0 3 1 — 1 2 9 5 | Page 0 2 of 0 6 |
|---|---|---|

**N1 Collision Diagram**

VEHICLES MOVED PRIOR TO OFFICERS ARRIVAL NO DIAGRAM.

**N2 Collision Narrative**

BOTH DRIVERS STATED VEHICLE 1 WAS STOPPED AT STOP SIGN AT THE INTERSECTION OF CR 18 AND LE 1638, VEHICLE 2 REARENDED VEHICLE 1.
VEHICLES MOVED PRIOR TO OFFICERS ARRIVAL NO DIAGRAM.

07/26/2010 15:39 FAX  205 581 9195      McGRIFF SEIBELS & WILLIA      ☑008/034



07/26/2010 15:40 FAX  205 581 9195     McGRIFF SEIBELS & WILLIA                    @009/034

| MUCR Vehicle | V1. Vehicle #: 0 1 | V1. Total Occupants: 0 1 | Agency Number: 0 0 3 1 | ST#: 1 2 9 5 | | | Page: 0 4 of 0 6 |
|---|---|---|---|---|---|---|---|

**Owner Information**

| V2. State | V3. Year | V4. License Plate Number | Same as Driver: X | V7. Owner Name: JOE N JONES |
|---|---|---|---|---|
| M S | 2 0 0 9 | J B A 9 9 4 | | |

V5. Make: F O R D  
V5. Model Year: 1 9 9 3  
V7. Vehicle Model: T A U R  
V8. Vehicle Color: B L U E  

V8. Owner Address: 2166 CR 23  
V8. City: RAY SPRINGS  
V8. State: M S  
V8. Zip Code: 39422  

V8. Damage: Heavy / Light● / None   V8. No. of Units: 0 0

V16. No Proof of Insurance  
V17. Insurance Company Name: PROGRESSIVE  
V18. Policy Number: 95314049-0

**Causes of Person, Vehicle/Non-Road Object**

| | 1 2 3 4 Non-Collision | Collision w/ Fixed Object |
|---|---|---|
| | Animal | Cargo Loss/Shift | Attenuator/Cushion |
| | Bicyclist | Crossover | Bridge Structure |
| | Maintenance Equip. | Equipment Failure | Culvert |
| | Moving Vehicle | Fell/Jump from Vehicle | Curb |
| | Parked Vehicle | Fire/Explosion | Ditch |
| | Pedestrian | Immersion | Embankment |
| | Train | Jackknife | Fence |
| ● | Slowing Vehicle | Median/Centerline | Guardrail |
| | Stopped Vehicle in Road | Thrown/Falling Object | Mailbox |
| | | Off roadway/Left | Median Barrier |
| | | Off roadway/Right | Post/Pole/Support |
| | | Overturn/Rollover | Tree |
| | | Unit Separation | Other Fixed Object |
| | | Over Correcting/Steering | |

| Vehicle Type | | |
|---|---|---|
| Passenger Car ● | School Bus | Train |
| Light Truck | Single-Unit Truck(2) | Truck/Trailer |
| Stationwagon/Van | Single-Unit Truck(3+) | Emergency Veh. |
| SUV | Farm Tractor | Commercial Bus |
| Motorcycle | Tractor/Semi/Trailer | ATV |
| Other | Tractor(2) | Farm Equip. |
| RV | Tractor(3) | Unknown Truck |

Initial Impact / Points:
| Under |
| Overturn |
| None |
| Other |

V19. Damaged Areas:
| None |
| Right only |
| Left Only |
| Both Sides |
| Separate |
| Signed |

| Channel-Painted | Officer | Straight/Level | Bridge | 2 Lane | 3 Lane | Asphalt |
|---|---|---|---|---|---|---|
| Channel-Physical | RR Flashing Signal | Intersect two roads ● | Private Drive | 4+ | Frontage/Ramp | Concrete |
| Flag Person | RR Signal and Gate | Straight/Grade | Curve/Bknwd | Parking Lot | One Way ● | Dirt |
| Flashing Signal Red | Signal | Curve/Level | Crossover | 1 Lane | Unpaved | Gravel |
| Flashing Signal Yellow | Stop Sign | Straight/Store in | Begin/End Divided Road | V20. Divided? Yes / No | | Other - See Narrative |
| No Passing | Railroad Sign | Curve/Grade | One-Way | V21. Center Turn Lane? Yes / No | | |
| None ● | Yield Sign | | | | | |

V22. Device Functioning? Y / N

V33. Towed? Yes / No ●   V34. Authority: Owner / Police / Other   V35. Towed By: _____

**Commercial Vehicle**

| C1. Carrier ID Number: | C2. Authority: US DOT / State / Mexico / MC / Canada | Cargo Type: Auto transporter / Bus<15 / Bus 16+ / Cargo tank / Concrete Mixer / Dump / None | Flatbed / Garbage/Refuse / Grain/chips/gravel / Other / Pole/log / Vehicle/boat tow / N/A |
|---|---|---|---|

C3. Carrier Name: _____  
C4. Carrier Address: _____  
C5. City: _____   C6. State: ___   C7. Zip Code: _____  
C10. Commodity Hauled: _____  
C11. Placard ID: _____  
C8. GVWR: _____  
C12. HAZMAT Released: Yes / No

1471024009



5899010293

07/26/2010 15:40 FAX  205 581 8195      McGRIFF SEIBELS & WILLIA                    011/034

**MUCR Vehicle**

| V0. Vehicle # | V1. Total Occupants | Agency Number | Agency Case Number | | Page |
|---|---|---|---|---|---|
| 0 2 | 0 1 | 0 0 3 1 1 2 9 5 | | | 0 6 of 0 8 |

**Owner Information**

V7. Year: M S . 2 0 1 0
V2. Make: F O R D
V4. License Plate Number: 1 A Z 2 2 9
V5. Model Year: 2 0 0 8
V9. Vehicle Model: F 3 5 0
V8. Vehicle Color: W H I T

V8. Damage: ☐ Heavy  ☐ Light  ☐ None   0 3

Same as Driver
V12. Owner Name: H AND H WELKING INC
V13. Address: 5440 HWY 11 N
V14. City: ELLISVILLE   V15. State: M S   V16. Zip Code: 39347
V17. Insurance Company Name: QBE INSURANCE CORP.   V18. Policy Number: ASA 30866

**Commercial Vehicle**

C1. Carrier ID Number:
C2. Authority: ☐ US DOT  ☐ State  ☐ Mexico   ☐ MC  ☐ Canada
C3. Carrier Name:
C4. Carrier Address:
C5. City:   C6. State:   C7. Zip Code:
C8. GVWR #:

C10. Commodity Hauled:
C11. Placard ID:
C12. HAZMAT Released: ☐ Yes  ☐ No

1471024009

V21. Device Functioning? ☐ Y  ☐ N
V22. Towed? ☐ Yes  ☐ No   V24. Authority: ☐ Owner  ☐ Police  ☐ Other   V25. Towed By:
V30. Divided? ☐ Yes  ☐ No
V31. Center Turn Lane? ☐ Yes  ☐ No

**Marcus K. Rutledge**

## Page 1

IN THE CIRCUIT COURT
OF THE FIRST JUDICIAL DISTRICT
OF JASPER COUNTY, MISSISSIPPI

JONATHAN JONES                          PLAINTIFF

VS                              NO.  19-0083

MARCUS K. RUTLEDGE                      DEFENDANT


DEPOSITION OF MARCUS K. RUTLEDGE


taken at the instance of the Plaintiff at Brame
Law Firm, 2781 Highway 15, Bay Springs,
Mississippi 39422 on Thursday, November 18, 2010
at 10:07 a.m.


Dawn Dillard, CSR
Certified Shorthand Reporter, #1763

## Page 2

1  APPEARANCES:
2
3    Thomas Q. Brame, Jr., Esquire
     tqbrame@bramelaw.com
4    Brame Law Firm
     2781 Highway 15
5    Post Office Box 301
     Bay Springs, Mississippi 39422
6    601.764.4355
7      Attorney for the Plaintiff
8
9    John S. Graham, Esquire
     jgraham@harrisgeno.com
10   Harris Jernigan & Geno, PLLC
     587 Highland Colony Parkway
11   Post Office Box 3380
     Ridgeland, Mississippi 39158-3380
12   601.427.0048
13     Attorney for the Defendant
14
15   Virginia "Ginny" Kennedy, Esquire
     gkennedy@heidelbergharmon.com
16   Heidelberg Harmon
     795 Woodlands Parkway
17   Suite 220
     Ridgeland, Mississippi 39157
18   601.351.3330
19     Attorney for the Defendant
20
21   ALSO PRESENT: Jonathan Jones
22
23
24
25

## Page 3

1              TABLE OF CONTENTS
2   Style...............................................1
3   Appearances......................................2
4   Table of Contents................................3
5   Stipulations.......................................4
6   Examination by Mr. Brame.........................5
7   Certificate of Deponent..........................68
8   Certificate of Court Reporter....................69
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 4

1              STIPULATION
2       It is hereby stipulated and agreed by and
3   between the parties hereto, through their respective
4   attorneys of record, that this deposition may be
5   taken at the time and place hereinbefore set forth,
6   by DAWN DILLARD, Court Reporter and Notary Public,
7   pursuant to the rules;
8       That the formality of reading and signing
9   is specifically NOT WAIVED;
10      That all objections, except as to the form
11  of the questions are reserved until such time as the
12  deposition, or any part thereof, may be used or
13  sought to be used in evidence.
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT

tabbies®

D

1  (Pages 1 to 4)

**Marcus K. Rutledge**

Page 45

1   Q.  Okay, and before you moved in with your
2   girlfriend where did you live in Texas?
3   A.  At work.  Wherever I worked, I had --
4   took a camper and stayed on location.  That's
5   part of my job.
6   Q.  Do you still have that camper?
7   A.  No, sir.
8   Q.  And do you have any --
9   A.  It's a company -- it's a company camper.
10  Q.  Oh, okay.
11  A.  That was assigned to me.
12  Q.  Do you have any other accommodations
13  now, whether it be company or personal or any
14  other source other than your girlfriend's home in
15  Texas?
16  A.  Yes, sir.
17  Q.  Where else?
18  A.  When you say accommodations, is that
19  saying that -- what are you saying?
20  Q.  Let me ask you a better question.  Where
21  is -- what all residences do you maintain?
22  A.  I maintain one residence.
23  Q.  Where is that?
24  A.  That's 2604 West Himer, Denton, Texas
25  76210.

Page 46

1   Q.  And that is with your girlfriend?
2   A.  Yes, sir.
3   Q.  And I'm sorry that I didn't write her
4   name down.  Tell me her name again?
5   A.  Erica McNutt.
6   Q.  Erica McNutt.  And is that also your
7   domicile at this time?
8   MS. KENNEDY:  Object to form.
9   A.  Yes, sir.
10  MS. KENNEDY:  You can answer.
11  MR. GRAHAM:  You can answer if you know
12  what he's talking about.
13  BY MR. BRAME:
14  Q.  Okay.  Yeah.  And that's been your
15  residence and domicile for about a month now,
16  give or take?
17  A.  Yes, sir.
18  Q.  Now, let's go back to the move of the
19  vehicles.  You moved those vehicles over to the
20  store parking lot?
21  A.  Yes, sir.
22  Q.  What next happened?
23  A.  We both got out and started talking
24  waiting for the Sheriff's Department.
25  Q.  And what was said between you two then?

Page 47

1   A.  It was brought up that his cousin, he
2   just got some bumpers, his cousin has like a skin
3   to a bumper or something that he could just get
4   to fix it.
5   Q.  Okay.
6   A.  And that was that and just he was on the
7   phone and I was on the phone.  It was just
8   general, discussed about me fixing it and I
9   agreed.
10  Q.  Okay.  You agreed to repair his vehicle?
11  A.  Yes, sir.
12  Q.  Felt like it was your fault?
13  A.  Not necessarily.
14  Q.  Why then would you agree to fix the
15  vehicle?
16  A.  At the time it just seemed like the
17  easiest thing to do.
18  Q.  And have you ever fixed his vehicle?
19  A.  I gave him the money to him.
20  Q.  How much money did you give him?
21  A.  $300.00.
22  Q.  When?
23  A.  At that time.
24  Q.  Right there on the scene?
25  A.  Yes, sir.

Page 48

1   Q.  And how did you and he determine that
2   $300.00 was adequate to fix the vehicle?
3   A.  Because he had told me how much it cost
4   to fix it the previous time.  He replaced -- just
5   replaced a tail light and a bumper and it was
6   like a couple hundred bucks.
7   Q.  Okay.  And you all discussed the damage
8   to his vehicle and that you were willing to
9   repair that vehicle and you gave him some money.
10  Was anything else said there then
11  between you and him from the time you got into
12  that parking lot until the law arrived?
13  A.  No.  We just, I mean, we talked about
14  how long does it take for the cops to arrive
15  after you call them, and after about -- which
16  took like an hour, hour and a half, it was just
17  -- that's basically all it was to it.
18  Q.  All right, and did you get a receipt for
19  the $300 cash that you gave him?
20  A.  No, sir.
21  Q.  And what occurred when the officer
22  arrived?
23  A.  He asked what happened, we both told
24  him.  He did a police report.  He gave Jonathan a
25  ticket for no insurance, then we both left.

12  (Pages 45 to 48)

**Marcus K. Rutledge**

| Page 49 | Page 51 |
|---|---|
| 1     Q.  Now, did Jonathan say any words at all | 1   be said, everything was done.  He didn't have |
| 2   that you recall other than what you've already | 2   insurance and it was just a spur of the moment |
| 3   told me? | 3   thing.  It was just everything was fixed. |
| 4     A.  Not that I can remember. | 4     Q.  Did you anticipate problems at work if |
| 5     Q.  Okay.  And did anyone observe this | 5   you had made a report about this accident in the |
| 6   accident that you know of other than you two | 6   company truck? |
| 7   participants? | 7     A.  No, sir.  No, sir. |
| 8     A.  No, sir. | 8     Q.  Okay.  But in fact when you had an |
| 9     Q.  Did anyone come along and stop and | 9   accident in the company truck at Walmart give or |
| 10   inquire or offer to render assistance, or for any | 10   take two months later, didn't you say that was |
| 11   other purpose stop at the scene of the collision? | 11   November of last year? |
| 12     A.  No, sir. | 12     A.  No, sir. |
| 13     Q.  Or at the store parking lot? | 13     Q.  I'm sorry, when was the event at |
| 14     A.  No, sir. | 14   Walmart? |
| 15     Q.  To your knowledge is anyone else a | 15     A.  Walmart was September, October. |
| 16   witness to anything that occurred either in the | 16     Q.  So less than -- because this was |
| 17   collision or what happened after until y'all left | 17   September of '09, so another one occurred in |
| 18   than you and Jonathan? | 18   Walmart pretty soon thereafter? |
| 19     A.  The store worker was there the whole | 19     A.  I believe so, pretty close. |
| 20   time that Jonathan and I was outside. | 20     Q.  All right.  And when you -- when |
| 21     Q.  Do you know who that person is? | 21   involved in a collision at Walmart or exiting |
| 22     A.  I don't know his name. | 22   Walmart you were discharged from H&H? |
| 23     Q.  How would you describe that person, male | 23     A.  Several weeks later. |
| 24   I understand? | 24     Q.  Okay.  But I believe you told me that |
| 25     A.  Yes, sir. | 25   was the reason you were discharged from H&H? |

| Page 50 | Page 52 |
|---|---|
| 1     Q.  Young or old, black or white, heavy or | 1     A.  Yes, sir.  Yes, sir. |
| 2   light? | 2     Q.  Were there any other reasons that lead |
| 3     A.  A large white guy. | 3   to your firing at H&H? |
| 4     Q.  Okay, and any idea how old he would be? | 4     A.  Just that termination. |
| 5     A.  Mid 40's. | 5     Q.  Were there any other -- I don't know |
| 6     Q.  Okay.  And you don't know that person, | 6   that we're communicating.  Were there any other |
| 7   you just know by sight, I guess, you don't have a | 7   reasons for the termination other than the wreck |
| 8   relationship of any kind with that person? | 8   at Walmart? |
| 9     A.  No, sir. | 9     A.  Yes, sir. |
| 10     Q.  When you left where did you go? | 10     Q.  What were the other reasons for the |
| 11     A.  I went to work. | 11   wreck? |
| 12     Q.  Did you report this event to the people | 12     A.  I failed a drug test. |
| 13   at work? | 13     Q.  When did you fail a drug test?  Was that |
| 14     A.  No, sir. | 14   the time of the discharge? |
| 15     Q.  H&H? | 15     A.  DOT mandates a drug test, a post-wreck |
| 16     A.  No, sir. | 16   drug test. |
| 17     Q.  Did you turn it in on company insurance? | 17     Q.  And what drugs were detected in your |
| 18     A.  No, sir. | 18   system for that wreck in November? |
| 19     Q.  To your knowledge was that truck | 19     MR. GRAHAM:  I would object to the line |
| 20   insured? | 20   of questioning as it's clearly subsequent to the |
| 21     A.  Yes, sir. | 21   subject accident.  And Mr. Brame has not |
| 22     Q.  Why did you not report the accident or | 22   established that this line of questioning would |
| 23   turn it in to the insurance office at work? | 23   lead to any admissible evidence at any trial of |
| 24     A.  It was discussed by me and Jonathan that | 24   this matter. |
| 25   we would -- he would fix his bumper, nothing to | 25     MS. KENNEDY:  Same objection. |

13 (Pages 49 to 52)